Eakle, J.
dissenting. From the best consideration which I have been able to bestow on this case, I am still of opinion that, in point of law, the plaintiffs cannot maintain this action, and that the nonsuit was properly ordered. The carrier’s lien for freight is too well established to be brought into question, and this entitles him to retain possession of the goods until his freight be paid.— He has a special property in them which, I hold, can only be divested by payment of the freight, or tender of it; and being in actual possession, he is not liable in trover, however else he may be liable, or to whatever extent, for any damages which the goods may have sustained. The first proposition for the plaintiffs, that by the law as well as the usage of trade, damages should be settled in the settlement of freight, derives no support from authority. The case of Bellamy v. Russell, 2 Show. 166, cited, is a direct authority the other way, and admits the law and usage of trade to be otherwise, but was decided upon a special custom to detain freight for damage. That the common law of England is otherwise, and that damages even through the default of the carrier cannot be set off against freight, even in actions brought to recover freight, will appear from several cases. Bornmann v. Tooke, 1 Camp. Rep., 377, was an action for freight; and when it was proposed to set off the damage suffered by the goods, against the demand for freight, Lord Ellenborough said “the defendant must bring his cross action for any loss he might have suffered from the default of the plaintiff. Shields v. Davis, 6 Taun. Rep., 65, was an action of assumpsit for the freight of butter; the casks having been accepted by the defendant from the plaintiff) who was the *209 carrier. The defence was that the butter was injured by the negligence of the plaintiff, and that therefore he could recover nothing. The jury found fot the plaintiff and on a motion for a new trial, the argument of Best, Sergeant, was exactly that used here, that the plaintiff’s right to freight attached only on the safe delivery of the goods; and if though delivered, they were not safely delivered, he could not recover freight; and, at all events, where the extent of the damage done to the butter was greater than the whole amount that would .have been due for the freight, the plaintiff could receive nothing : but the defence was not allowed. Gibbs, Ch. J., said, the- plaintiff is liable to a cross action, and Heath, J. added, “ here the consignee has accepted the goods, and the principle is, that if he has received any benefit whatever by the carriage, he cannot set up this defence.” The principle laid down by-Mr. Justice Heath, is fully admitted, and laid down by all the commentators and elementary writers, who agree that freight is earned whenever the goods are delivered and accepted, although in a damaged condition. The carrier, therefore, in this case, was entitled to receive, and had a right of action for, his whole freight; and according to the English cases, the damages could not have been set off but the freighter must bring his cross action.
The argument o.n the 2d ground for plaintiffs is, that by our discount law, in case of an action brought for freight, the owner may, under notice, prove that the goods have been damaged beyond the amount due for freight, and on such proof would recover the excess; and this may well be admitted without at all affecting the true grounds on which the defendant in this case stands. He does not bring his action for freight, and therefore there is no room for this discount. He has a special property, and is in possession of the goods, and having earned his freight, which the plaintiffs having accepted a large part of, are estopped from saying he has not earned — he has a right to retain the goods until payment or tender. To hold him liable in trover, upon the bare proposition that the goods are damaged beyond the amount of freight, I speak it with deference, is to repeal the laws of lien for freight, and to introduce a novel principle into the law of trover.’ To make the *210 right of property or possession in trover to depend upon the question of a greater or less amount of damages to goods, is to make an issue altogether foreign to that made by the record, and one which a consignee, as in this case, or the owner of the boat himself would never know how to meet. It would seem, on well settled rules of law, that a right to maintain or resist an action, must be absolute and perfect when the action is brought. The rights of the plaintiff at least must always be referred to the time of action brought; yet, in such a case as this, neither the plaintiff nor the defendant can by any possibility know — the one, whether he can sustain his action, or the other, whether he can resist it; but the event of the suit is made to depend on circumstances, of which both, in nine cases out of ten, must be ignorant. The carrier having brought the goods to the place of destination and delivered a large portion, has a certain and ascertained demand, with a legal right to retain so much of the goods as will discharge it. It would seem to be right, and reasonable, and just that this right on his part should protect him against an action of trover, until extinguished by some counter demand equally legal and certain, nor that he should be deprived of his lien and driven to his action for freight, on the mere ground that he had made himself liable to a cross action. The effect of such a decision will be to compel the carrier or his agent in every case where there is any plausible allegation of damages, to abandon his lien and deliver the goods. The argument of avoiding multiplicity of suits has no foundation whatever. The carrier will be driven to his action for the freight and the freighter to his discount for damages, and vice versa. If the freight exceed the damages, the lien, which would have been good, is gone, and the goods disbursed, to the entire loss, perhaps, of the carrier’s demand.
If damages to the goods will extinguish the lien for freight, why would not any other right of action which the freighter might acquire against the carrier, if it should exceed ..the amount due for freight? For, if the question of damage to the goods may be tried on an issue in trover, I see no reason why any other damages, whether by contract or tort, wherein lands or goods are concerned, may not as well be laid. The hardship and unreasonableness of *211 the rule about to be established might be further illustrated in its operation upon other classes of liens — those of attorneys, factors, innkeepers, and the like ; for all must be subjected to the application of the same principle, if it be one, that an actual right to property in possession may be extinguished or perfected by incurring a liability for damages. But the great difficulty, which I cannot get over, is, that the plaintiff cannot know whether he has a perfect right of action, nor the defendant, whether he can or ought to resist it; for neither can know the amount of damages which may be proved, and on that the right of recovery is made to depend. Suppose a case, where the damage proved is exactly equal to the amount of freight, who shall have the verdict ? Suppose the plaintiff proves less damage, does he fail in his action altogether, or entitle himself to an abatement pro tanto, from the amount due for freight ? The anomalies of this proceeding are numerous and striking. I think it would be safer and more conformable to precedent and authority to support the lien, and let the freighter bring his action for the damages in proper form.
Note. — In relation to the principal questions involved in this case, in the discussion and determination of which the court were so seriously divided, it may not he amiss, and the reporter trusts it will not be considered presumptuous in him, to submit some additional references to authorities, and possibly some views which have occurred to him on the subject. It is clear according to the authorities in England, that in an action by the carrier against the shipper or consignee, for freight, where the goods have been delivered and accepted, the defendant cannot set up, , by way of defence or set-off to the plaintiff’s, action, the. damage which the goods may have sustained in their transportation, whether that damage be more or less than the freight, or precisely equal to it, and that the .freighter must bring his cross action. (See the cases referred to by his Honor, Judge Earle, in his dissenting opinion.) Such a defence is clearly not embraced under the English statutes of set-off. Is it admissible under ours 1 The terms of our discount law are very broad, and would seem, prima facie, so extensive as to embrace any demand or cause of action which the defendant may have against the plaintiff, of whatever character it may be. The material words are, “ that in all actioné whatever, brought for the recovery of any debt by any plaintiff, &c., it shall and may be lawful for the defendant, if he have any accompt, reckoning, demand, cause, matter, or thing, against the plaintiff, to give the same in evidence by way of discount, &c.” It further provides “ that judgment shall be entered up for the plaintifffor the balance only, and that if the plaintiff be found to be indebted to the defendant, judgment shall be entered for the defendant, &c., provided the defendant intending to discount any sum or sums of money, accompts, reckonings, demands, matters, or things, alleged to be due and owing to him from the plaintiff, do make a copy and deliver the same twelve days before the trial.” Do not the words indebted to the defendant, balance, sum or sums of money, alleged to be due and owingto him from the plaintiff, evidently apply to monies due to the defendant upon contract, and limit the generality of the other terms employed ? Would il be a forced construction to say, taking the whole act together, not only that it applies merely to monies due to the defendant upon contract, but that it is further limited to cases where the amount is certain and liquidated by the contract, and was never intended to apply to a case of uncertain or unliquidated damages, although arising upon contract? What, otherwise, are the meaning of the terms indebted, alleged to be due and owing, from the plaintiff? The constructions given to our act by some of the earlier cases, would seem to conflict with each other, and there is perhaps no case in which the true construction is definitely settled. In Cook v. Rhine, 1 Bay. Rep. 16, Heyward and Grimke, Justices, contrary to the opinion of Bay, J., held that “ where damages accrue by non-performance of a contract for building a house within a certain time, the defendant might, under our discount law, give them in evidence against the plaintiff’s demand for work, labor and services performed in building the house.” The argument of counsel there was, on one side, that the discount law only extended to liquidated accounts and not to matters sounding in damages; and on the other, that the act extended to any cause, matter or thing, in the defendant’s own right, to be set off.
Petigru and Lesesne, for the motion.
M’Grady, contra.
Richaedson, J. concurred with Mr. Justice Eaele.
If the principal case before the court, had been an action by the carrier against the shipper for freight, the analogy between it and the case of Cook v. Rhine, would be very marked, and as far as the construction of the discount law is involved, that case may be considered almost'identical. In Gibbes v. Mitchell, 2 Bay, Rep. 351, in which the true construction of the discount act came up again for consideration, the court, (consisting of Waties, Bay, Johnson, Trezvant and Brevard, say, “ that the discount law never meant that torts, trespasses or any unascertained damages, should be set off. That it contemplated debts, dues and demands,'of a pecuniary nature, or something springing out of a contract where there were mutual covenants, &c., and “ that the word balance due to the defendant, for which a judgment is directed by the act, if found by the jury, furnished further proof of the intention of the legislature, that money transactions only were alluded to in the act.”
Although numerous cases involving the right of discount have occurred since the above, they have been principally cases of defence by way of discount to actions on bonds or notes given for the purchase money of property, where there has been a partial failure of consideration, or misrepresentation, or fraud in the sale, and the general construction of the statute upon the points discussed, remains, as far as the reported cases go, upon Cook v. Rhine and Gibbes v. Mitchell. But assuming either construction of the statute, and that in an action by the carrier for freight, in such a case as the above, the freighter might set up the damage done to the goods as a discount to the plaintiff’s action,-does it follow necessarily that the freighter under such circumstances can sustain an action of trover for the recovery of a part of the cargo detained by the carrier for freight, without paying or tendering the freight money to him ? In virtue of the delivery of the goods, the carrier acquires a special property in them and may maintain an action against any person who displaces that possession, or does any injury to them; and having once acquired the lawful possession of the goods for the purpose •of carriage, the carrier is not obliged to restore them to the owner, even if the carriage is dispensed with, unless upon being paid his due remuneration. Story. Com. on Bailments, p. 372. The carrier is also entitled to a lien on the goods for his hire, and is not compellable to deliver them until he receives it, unless he has entered into some special contract, by which it is waived. — Ibid, p. 373. The consignor or shipper is ordinarily bound to the carrier for the hire or freight of the goods ; but whenever the consignee engages to pay it, he also may become responsible. It is usual for hills of lading to state that the goods are to be delivered to the consignee or to his assigns, he or they paying freight; in which case, the consignee and his assigns, by accepting the goods, become, by implication, bound to pay the freight. Ibid, p. 373, 374.
Now what was the contract in this case on the part of the carrier 1 It was to deliver the 250 bales of cotton to Boyce & Co. (the consignees,) at Charleston, they paying freight for the same at the rate of one dollar per hale. The agent of the carrier, (the defendant,) delivered 243 bales of the cotton to Boyce & Co. which were accepted by them, and detained the remaining seven bales under his right of lien for the freight. The contract then was to deliver to Boyce & Co. on their paying freight for the same; by accepting the 243 bales, as between the carrier and the consignees, would they not have been estopped from setting up any damage done to the cotton in its transportation, through the fault of the carrier, in bar of the carrier’s claim for freight"! But above all, could the shipper under this state of facts, claim the possession of the cotton by an action of trover ! It does not appear by the statement of the case, that there was a bill of lading, though it is perhaps fairly inferrible that there was one, and that the bill of lading came into the hands of-Boyce & Co. the consignees. In this'viewof the evidence, where was the right of property and of possession? In the plaintiffs, the consignors ? or in Boyce & Co. the consignees ? even waiving the right of the carrier to retain for freight. It is fair, however, to suppose that the question was agreed to be considered by the counsel in the case, as if the consignees were the plaintiffs in the action, or the present plaintiffs as having all the rights of the consignees. In any view of the evidence, it appears that the greater portion of the cotton had been delivered and accepted — and the question results, would an action of trover lie against the carrier, either in favor of the consignors or consignees, while the freight agreed to be paid was unpaid ! As to the consignors, standing upon their own rights merely, would not the production of the contract itself, between them and the carrier, show that they had no right to the possession, while the condition upon which the carrier was to deliver the goods to the consignees, to wit, the payment of freight at a stipulated price per bale, was unperformed ! and as to the right of the consignees to sustain trover, does not the same objection apply, strengthened by the fact that they had accepted the greater part of the cotton, and thereby had assented to the terms of the contract and impliedly agreed to pay the stipulated freight.
But it is assumed that if the goods were damaged by the fault of the carrier, to an amount equal to, or more than the freight, no freight was due— and that there was consequently no lien, and that an action of trover would lie against the carrier to recover possession of the goods. Conceding, however, the fact of damage, does it follow that no freight was dice? All the authorities show that the freight is earned and payable when the goods are delivered; (although in a damaged condition, and that by the fault of the carrier.) In such a case, the shipper, in the exparte adjustment of the matter which he is supposed to make of the damages and freight, does not deny that freight is due, but on the contrary allows it, as a precedent charge, and if the damages were less than the freight, would be bound to tender it, and if more, would allow it, as so far reducing his claim for damages. Can it be said that a bond, or note, payable to the plaintiff, is not due, because the defendant has a counter claim against him to an equal or greater amount! even though it be one which he may clearly set up by way of discount!— Does not sound policy, as well as the symmetry of the law, require that the freighter should be put to his cross action for damages, rather than allowed to delay ór embarrass the prompt payment of freight, by counter claims for damages, or actions of trover for the goods ! There might be cases, it is true, where the right to discount the damages against the freight, would be important, as where the carriers were insolvent, or irresponsible, or out of the jurisdiction of the court; but as a general rule, would not that which requires the unconditional payment of the freight on delivery of the goods, and puts the freighter to his cross action for damages, be found most congenial to the interests of commerce, as well as most in harmony with the general principles of the law!
The length of this note, (already extended much further than was interned,) and for which the reporter is perhaps bound to apologise, as throwing no new light on the subject discussed, forbids any further comment upon the important principles involved in this case. Without saying whether his own opinion is very decidedly made up or not, upon the points discussed, (which would be of little importance to mention, if it were,) the consequence of the principles bearing on the case, the well reasoned opinions, both of the majority and minority of the court, excited the interest and attention of the reporter and induced him to submit such suggestions and references as he thought might be acceptable to the profession. One thing is certain, however, that the principles recognised by a majority of the court, in this case, are now a part of the law of the land, and have received the highest legal sanction, of which (perhaps) they are capable in this State. - K.